UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL SAMMS,

                                    Plaintiff,

                                                              9:10-CV-0349
v.                                                            (GTS)

BRIAN FISCHER, Comm'r of the Dep't of
Corr. Servs.; LUCIEN J. LeCLAIRE, JR.,
Deputy Comm'r of Corr. Facilities;
S.B. DUNCAN, Senior Investigator;
NORMAN BEZIO, Dir. of Special Housing
and Inmate Disciplinary Programs;
ESTATE OF CURTIS DROWN, a/k/a Drown;
DALE ARTUS, Superintendent of Clinton
Corrr. Facility; and S.E. RACETTE, Deputy
Superintendent of Sec. and Comm. Chairman,

                                    Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

MICHAEL SAMMS, 07-A-4065
    Plaintiff, *Pro Se*
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN                      CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York     Assistant Attorney General
    Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this *pro se* prisoner civil rights action filed by Michael Samms ("Plaintiff") against the seven above-named New York State correctional employees ("Defendants"), are Defendants' motion for summary judgment (Dkt. No. 76), a United States magistrate judge's Report-Recommendation recommending that Defendants' motion be granted in part and denied in part (Dkt. No. 84), Defendants' Objection to the Report-Recommendation (Dkt. No. 88), and Plaintiff's Objection to the Report-Recommendation (Dkt. No. 89). For the reasons set forth below, the Report-Recommendation is accepted in part and rejected in part, and Defendants' motion is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Plaintiff filed his Complaint in this action on March 25, 2010. (Dkt. No. 1.) Generally, construed with the utmost of liberality, Plaintiff's Complaint alleges that, immediately after he was transferred to Clinton Correctional Facility("Clinton C.F.") on January 11, 2008, Defendants placed him in an especially hot and unsanitary cell in a special housing unit ("SHU") without cause, where he remained for a period of approximately twenty-two months, despite his appeals. (*Id.*) Based on these factual allegations, Plaintiff asserts the following claims: (1) a claim that Defendants violated his procedural due process rights under the Fourteenth Amendment by, inter alia, causing him to be placed in administrative segregation, failing to timely schedule an initial administrative segregation hearing, conducting a biased administrative segregation hearing, and failing to remedy the violation after learning of it through a report or appeal; and (2) a claim that Defendants violated his right to be free from inadequate conditions of confinement under the

Eighth Amendment by being aware of, but failing to remedy, the hot and unsanitary conditions in his cell in SHU. (*Id*.)

Familiarity with these claims and the factual allegations supporting them is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id*. at Parts IV-VI.)

**B.     Parties' Briefing on Defendants' Motion for Summary Judgment**

Generally, in their motion for summary judgment, Defendants assert the following three arguments: (1) Plaintiff's Fourteenth Amendment claim should be dismissed because (a) based on the admissible record evidence it is clear that a proper administrative segregation hearing was conducted on January 22, 2008, four days before the expiration of the 14-day deadline imposed by the governing regulations, and (b) in any event, Plaintiff has failed to establish the personal involvement of any of Defendant (other than Defendant Drown, the administrative hearing officer) in the due process violation alleged; (2) Plaintiff's Eighth Amendment claim should be dismissed because (a) there is no admissible record evidence establishing that Plaintiff has experienced objectively actionable conditions of confinement, (b) in any event, there is no admissible record evidence establishing that any Defendant has engaged in subjective deliberate indifference to Plaintiff's conditions of confinement, and (c) in any event, Plaintiff has failed to establish the personal involvement of any of Defendants in the unsanitary conditions of confinement alleged; and (3) in any event, Defendants are protected from liability as a matter of law by the doctrine of qualified immunity. (Dkt. No. 76, at Parts I-III.)

Generally, in his opposition to Defendants' motion, Plaintiff asserts the following three arguments: (1) Defendants are not entitled to summary judgment on Plaintiff's Fourteenth

Amendment claim because (a) they failed to timely administer an initial placement hearing within the *seven-day* deadline imposed by the regulations that govern cases, such as this one, in which the inmate is *not* confined to an administrative segregation unit, and (b) all Defendants (not just Defendant Drown) were personally involved in the alleged due process violations by assigning Drown to Plaintiff's case, affirming Drown's determination, and/or failing to remedy his due process violation after learning of it; (2) Defendants are not entitled to summary judgment on Plaintiff's Eighth Amendment claim because they deliberately turned a blind eye to his complaints of unsanitary conditions in SHU; and (3) based on the current record, Defendants are not entitled to qualified immunity as a matter of law. (Dkt. No. 80, at Points I-III.)

Generally, in their reply, Defendants argue that the deadline for Plaintiff's administrative hearing was not the seven-day deadline imposed by 7 N.Y.C.R.R. § 251-5.1 (which controls the timeliness of a disciplinary hearing or superintendent's hearing following confinement on a new misbehavior report) but the 14-day deadline imposed by 7 N.Y.C.R.R. § 301.4(a). (Dkt. No. 81.)

C.      **Magistrate Judge's Report-Recommendation**

Generally, in the Report-Recommendation, the magistrate judge recommends that Defendants' motion be granted as to all of Plaintiff's claims against Defendant Fisher and Plaintiff's conditions-of-confinement claim against all Defendants, but that Defendants' motion be denied as to Plaintiff's remaining claim (the procedural due process claim against Defendants LeClaire, Duncan, Bezio, Drown, Artus and Racette). (Dkt. No. 84.)

More specifically, with regard to Plaintiff's claims against Defendant Fisher, the magistrate judge concludes that a supervisor's referral of a complaint to a subordinate for investigation (which is the sole personal involvement that Fischer had in this case) does not constitute personal involvement. (*Id*.)

With regard to Plaintiff's conditions-of-confinement claim, the magistrate judge concludes that Plaintiff has failed to adduce admissible record evidence establishing that (1) that the special SHU cell in which he was originally placed was so hot, stuffy and dry as to deny him the minimal civilized measure of life's necessities, and (2) that any Defendant was personally involved in the unsanitary conditions in the cell in which Plaintiff was placed after the administrative segregation hearing.  (*Id.*)

Finally, with regard to Plaintiff's procedural due process claim, the magistrate judge concludes that Plaintiff has presented admissible record evidence establishing both his procedural due process claim and the personal involvement of all Defendants (except Defendant Fischer) in the underlying procedural due process violation.  (*Id.* at Part III.A.)  At the crux of this conclusion is her finding that, while Defendant Drown conducted Plaintiff's administrative segregation hearing in a timely fashion, it appears (based on the only admissible evidence on the subject in the record) that he wrongfully denied Plaintiff an opportunity to present his views at the hearing by persuading Plaintiff not to call any witnesses or make too many objections because he was under a "strict order" to find Plaintiff guilty.  (*Id.*)  Also at the crux of this conclusion are (1) her finding that Defendants Artus, Duncan and Racette were personally involved in this violation by essentially causing Plaintiff to be issued an unjustified administrative segregation recommendation and confined pending a decision on that recommendation, and (2) her finding that Defendants Bezio and LeClaire were personally involved by essentially denying his appeals and letters of complaint despite being placed on notice of the wrongdoing of Defendant Drown.  (*Id.*)

Familiarity with the remaining grounds of the magistrate judge's Report-Recommendation is assumed in this Decision and Order, which (again) is intended primarily for the review of the parties.

### D. Parties' Objections to the Report-Recommendation

#### 1. Defendants' Objection

Generally, in their Objection to the Report-Recommendation, Defendants argue that the Plaintiff's procedural due process claim should be dismissed against Defendants Artus, Bezio, Duncan, LeClaire, Racette and Drown for four reasons. (Dkt. No. 88.)

First, argue Defendants, Plaintiff has not presented admissible record evidence establishing that Defendants Artus, Bezio, Duncan, LeClaire, and Racette were personally involved in an "ongoing" due process violation against Plaintiff following January 22, 2008, because (a) Defendant Drown's administrative-segregation determination lasted only sixty days, after which time Plaintiff's administrative segregation was reviewed, and continued, every sixty days by a committee of three other officials (conduct giving rise to claims that have already been dismissed in this action), and (b) in any event, to the extent Defendants LeClaire and Bezio responded to Plaintiff's correspondence, they did so based on less information than that possessed by the aforementioned committee, and in merely a routine fashion, which is presumed to be regular and not proof of wrongdoing. (*Id.*)

Second, argue Defendants, Plaintiff has not presented admissible record evidence establishing that a procedural due process claim against Defendant Drown because (a) the magistrate judge has already concluded that Plaintiff's confinement in administrative segregation cannot support an Eighth Amendment claim, thus narrowing the "significant and atypical hardship" inquiry to one dependent on the duration of Plaintiff's confinement, (b) at the time he rendered his determination, Defendant Drown knew only that Plaintiff would be confined for a duration of sixty days, after which time the confinement would depend on the independent determination of a three-member committee, and (c) a duration of sixty days (without proof of

conditions that were atypical as compared to those in other types of prison confinement) will not give rise to a cognizable liberty interest. (*Id*.)

Third, argue Defendants, even if Defendants LeClaire and Bezio could fairly be deemed to have been "personally involved" in ratifying Defendant Drown's initial placement decision, there is no basis on which to find that the placement itself was constitutionally infirm, because state action taken on the basis of both valid and invalid motivations is not constitutionally tainted by the invalid motive if the action would in any event have been taken on a constitutionally valid basis, which (here) it would have been, due to the other evidence that was relied on (or could have been relied on) by Defendant Drown. (*Id*.)

Fourth, argue Defendants, at the very least, qualified immunity protects them from liability because (a) a qualified immunity analysis rests on the reasonableness of a defendant's conduct based on the information known to him when the challenged conduct occurred, and not based on an unpredictable series of subsequent events, and (b) here, Defendants could not have known that Plaintiff's administrative segregation would have been repeatedly renewed by a committee of three officials. (*Id*.)

### 2. Plaintiff's Objection

Generally, in his Objection to the Report-Recommendation, Plaintiff argues that his conditions-of-confinement claim should not be dismissed for the following four reasons. (Dkt. No. 89.)

First, argues Plaintiff, as stated on pages 8 and 9 of Plaintiff's opposition memorandum of law, and demonstrated in affidavits of witnesses, Defendants (except Duncan, Drown and Bezio) were personally involved in the ongoing Eighth Amendment violation because they failed to remedy it despite having been made aware of it through oral and written complaints. (*Id*.)

Second, argues Plaintiff, the seriousness of the conditions of confinement in administrative segregation was not based merely on the atrociousness of those conditions and the duration of that confinement but on the psychological effects of that confinement (specifically, the diagnosis of post-traumatic stress disorder resulting in a prescription of two different psychotropic medications).  (*Id*.)

Third, argues Plaintiff, he should be afforded the opportunity to have the medical record "produced at trial," and to call his prison psychologist as a witness, because he believes that Defendants "scared [him] off," preventing him from treating Plaintiff and intervening in Plaintiff's administrative segregation.  (*Id*.)

Fourth, argues Plaintiff, the fact that insufficient evidence existed upon which to place Plaintiff in administrative segregation is further supported by the fact that, after being released from administrative segregation, he has had no disciplinary infractions, he has participated in various classes and certificate programs, and he was recommended  and recently admitted to the "Honor Block" Committee.  (*Id*.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard Governing the Review of a Report-Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review.  Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).  To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings,  recommendations, or report to which it has an objection and [2] the basis for the objection."  N.D.N.Y. L.R.

72.1(c).[1]  When performing such a *de novo* review, "[t]he judge may . . . receive further

evidence. . . ." 28 U.S.C. § 636(b)(1).  However, a district court will ordinarily refuse to consider

evidentiary material that could have been, but was not, presented to the magistrate judge in the

first instance.[2]

    When only a *general* objection is made to a portion of a magistrate judge's

report-recommendation, the Court subjects that portion of the report-recommendation to only a

*clear error* review.  Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee

Notes: 1983 Addition.[3]  Similarly, when an objection merely reiterates the *same arguments* made

---

[1]     *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002)
("Although Mario filed objections to the magistrate's report and recommendation, the statement
with respect to his Title VII claim was not specific enough to preserve this claim for review. The
only reference made to the Title VII claim was one sentence on the last page of his objections,
where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set
forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.'
This bare statement, devoid of any reference to specific findings or recommendations to which
he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title
VII claim.").

[2]     *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In
objecting to a magistrate's report before the district court, a party has no right to present further
testimony when it offers no justification for not offering the testimony at the hearing before the
magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v.
Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its
discretion in denying plaintiff's request to present additional testimony where plaintiff "offered
no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v.
Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the
district court to conduct a second hearing whenever either party objected to the magistrate's
credibility findings would largely frustrate the plain objective of Congress to alleviate the
increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory
Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary
evidentiary hearing is required.").

[3]     *See also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y.
Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir.
1999).

by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[4]  Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review.  Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.  When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Id.*[5]

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

## B.  Standard Governing a Motion for Summary Judgment

The magistrate judge correctly recited the legal standard governing motions for summary judgment.  (Dkt. No. 84, at Part II.A.)  As a result, this standard is incorporated by reference in this Decision and Order.

---

[4]      *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[5]      *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

### C. Standards Governing Plaintiff's Claims and Defendants' Defenses

Because the parties (in their memoranda of law) have demonstrated an accurate understanding of the legal standards governing a procedural due process claim, a conditions-of-confinement claim, a lack-of-personal-involvement defense, and the qualified-immunity defense (Dkt. Nos. 76, 80), and because the magistrate judge correctly recited those legal standards in the Report-Recommendation (Dkt. No. 84), the Court will not repeat those standards in this Decision and Order (which, again, is intended primarily for the review of the parties), other than to discuss the most-relevant portions of those standards below in Part III of this Decision and Order.

## III. ANALYSIS

### A. The Magistrate Judge's Recommendation that Both of Plaintiff's Claims Against Defendant Fisher Be Dismissed

Even when construed with the utmost of special liberality, the only *specific* challenge that Plaintiff's Objection levels at the magistrate judge's recommendation that both of Plaintiff's claims against Defendant Fisher be dismissed for lack of personal involvement is that Fisher failed to remedy the asserted Eighth Amendment violation despite learning of it through one or more letters mailed to him.  (*See generally* Dkt. No. 89 [referencing pages 8 and 9 of his Opp'n Memo. of Law].)  As a result, to the extent that the magistrate judge's recommendation also addresses Plaintiff's Fourteenth Amendment claim against Defendant Fisher, the Court need subject that portion of the recommendation to only a clear-error review, which it survives.  *See, supra,* Part II.A. of this Decision and Order.

Moreover, even if the Court were to submit both portions of the recommendation to a de novo review, the Court would reach the same conclusion: that recommendation is free of error.

11

The magistrate judge employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 152.) As a result, the Court adopts the entire recommendation for the reasons stated therein.

The Court would add only that the Second Circuit's recent decision in *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013), does not warrant a rejection of this recommendation. In *Grullon*, the Second Circuit indicated that a prisoner's sending of a letter of complaint to a prison warden–"at an appropriate address and by appropriate means"–would suffice to personally involve the warden in the underlying violation (assuming that either the warden did not subsequently take appropriate action or an administrative procedure was not in place by which the warden would not have received letter). *Grullon*, 720 F.3d at 141.[6] However, the decision turned on the fact that the issue arose in the context of Fed. R. Civ. P. 12(b)(6), rather than Fed. R. Civ. P. 56 (despite the fact that both legal standards involve a finding of reasonableness).[7] In addition, here, Defendant Fischer did take appropriate action, i.e., by referring the matter to a subordinate, on whom he was entitled to rely to conduct an appropriate investigation and response.[8] Finally, *Grullon* (which appears to constitute a departure from a

---

[6]    It bears noting that the original complaint in *Grullon* (which the Second Circuit agreed was insufficient to allege personal involvement) did not in fact allege the address to which he sent his letter to the warden–even when construed in conjunction with the copy of the letter that the prisoner sent to the warden. *See Grullon v. Warden*, 10-CV-0076, Ex. A to Plf.'s Response to Defs.' Motion to Dismiss (D. Conn. filed March 7, 2011) (attaching copy of letter).

[7]    *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged.") (emphasis added).

[8]    *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Brown v. Goord,* 04-CV-0785, 2007 WL 607396, at *6 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J., on *de novo* review); *Swindell v. Supple*, 02-CV-3182, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3, 2005); *Garvin v. Goord*, 212 F. Supp.2d 123, 126 (W.D.N.Y. (2002).

settled legal standard)[9] arose after the spring of 2008, rendering Defendant Fischer protected by qualified immunity.

For all of these reasons, this recommendation is adopted.

**B.      The Magistrate Judge's Recommendation that Plaintiff's Conditions-of-Confinement Claim Against All Defendants Be Dismissed**

When construed with the utmost of special liberality, Plaintiff's Objection contains only a few specific challenges to that portion of the Report-Recommendation recommending that Plaintiff's conditions-of-confinement claim against all Defendants be dismissed.  (*See generally* Dkt. No. 89.)  In particular, Plaintiff challenges (1) the magistrate judge's finding that no admissible record evidence exists establishing that Defendants Racette, Artus and LeClaire were personally involved in the unsanitary conditions in Plaintiff's post-hearing cell, and (2) the magistrate judge's finding that no admissible record evidence exists establishing that Plaintiff's pre-hearing cell denied him the minimal civilized measure of life's necessities.  (*Id.*)

Plaintiff expressly does not challenge the magistrate judge's finding that no admissible record evidence exists establishing that Defendants Drown, Duncan and Bezio were personally involved in the unsanitary conditions in his post-hearing cell.  (*Id.*)  Moreover, Plaintiff's Objections cannot be meaningfully interpreted as challenging any finding that no admissible

---

[9]      *See, e.g., Smith v. Goord*, 375 F. App'x 73, 73-74 (2d Cir. 2010), *aff'g in pertinent part, Smith v. Goord*, 06-CV-0401, 2008 WL 902184, at *5 (N.D.N.Y. March 31, 2008) ("[T]he fact that plaintiff sent a letter to Commissioner Goord [at his address at Harriman State Campus #2, 1220 Washington Ave., Albany New York 12226, as reflected in Dkt. No. 20], and another to a Deputy DOCS Commissioner [at the same address], absent additional facts not now presented, is insufficient to establish defendant's personal involvement in the constitutional violations alleged.") (Peebles, M.J., adopted by Scullin, J.).  It is worth noting that, if courts found personal involvement every time prisoner mailed a properly addressed letter to a supervisor, "the requirement [of personal involvement] would lose all meaning." *Mateo v. Fischer*, 682 F. Supp.2d 423, 430 (S.D.N.Y.2010).

record evidence exists establishing that Plaintiff's post-hearing cell denied him the minimal civilized measure of life's necessities, because the magistrate judge renders no such finding. (Dkt. No. 84.) As a result, both the magistrate judge's finding regarding Plaintiff's Eighth Amendment claim against Defendants Drown, Duncan and Bezio, and the finding regarding the measure of life's necessities afforded by his post-hearing cell need only survive a clear-error review, which they do. *See, supra,* Part II.A. of this Decision and Order.

Moreover, again, even if the Court were to submit the entirety of the recommendation regarding Plaintiff's Eighth Amendment claim to a de novo review, the Court would reach the same conclusion: that recommendation is free of error. The magistrate judge employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 152.) As a result, the Court adopts the entire recommendation for the reasons stated therein.

The Court would add only three points. First, Plaintiff has failed to point to admissible record evidence establishing that (1) during the time in question, he specifically notified Defendants Racette, Artus and LeClaire of the unsanitary conditions in Plaintiff's post-hearing cell, (2) those three Defendants had the authority to remedy those conditions, and (3) those conditions were not promptly and sufficiently remedied by other officers after discovery.

Second, in assessing the seriousness of the conditions of confinement in Plaintiff's pre-hearing cell, the Court examines the *objective* nature of those conditions. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[T]he deprivation alleged must be, objectively, sufficiently serious.") (internal quotation marks omitted). Plaintiff's *subjective* feelings about his cell are not relevant

during that inquiry.[10] Even if the Court were able to consider Plaintiff's subjective feelings, it would not do so here, given the late-blossoming and conclusory nature of the assertion made by Plaintiff.

Third, his third and fourth objections (described above in Part I.D.2. of this Decision and Order) are too late-blossoming and conclusory to justify the rejection of the magistrate judge's recommendation regarding Plaintiff's Eighth Amendment claim. Moreover, his fourth objection has nothing to do with his Eighth Amendment claim.

For all of these reasons, this recommendation is adopted.

**C.    The Magistrate Judge's Recommendation that Plaintiff's Procedural Due Process Claim Against Defendants Artus, Duncan, Racette, Drown, Bezio and LeClaire Survive**

Because Defendants' Objection contains specific challenges to the magistrate judge's recommendation regarding Plaintiff's procedural due process claim against Defendants Artus, Duncan, Racette, Drown, Bezio and LeClaire, the Court must review that recommendation de novo. *See, supra,* Part II.A. of this Decision and Order.

---

[10]    *See, e.g., Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Snipes also claims prison authorities were deliberately indifferent to a prison condition posing a substantial risk of serious harm, namely, an inch or two of standing water in the shower. Snipes believes the fear and emotional distress he suffered from contemplating the risk of contracting AIDS or some other communicable disease constitutes a cruel and unusual punishment for which even the prison plumber should pay. . . . Assuming Snipes' story is true, the fact remains that an inch or two of water in the shower, even where one has a sore toe, is not 'an excessive risk to inmate health or safety' . . , nor the 'denial of the minimal civilized measure of life's necessities.' . . . The shower condition he describes may require extra care on his part to keep the toe clean, but such needed precautions do not ignite a constitutional claim"); *cf. Calhoun v. Hargrove*, 312 F.3d 730, 734 (10th Cir. 2002) ("[T]o establish an Eighth Amendment claim, Calhoun must demonstrate, inter alia, an objective component of conditions so serious as to deprive him of the minimal measure of life's necessities. . . . Therefore, Calhoun's claims of verbal abuse are not actionable under § 1983, . . . and neither are his claims that he was forced to once beg for food that he eventually received.").

### 1.    Defendant Drown

After carefully considering the matter, the Court accepts the magistrate judge's recommendation regarding Defendant Drown.

As an initial matter, the Court rejects Defendants' argument that, based on the current record, it is undisputed that Plaintiff did not have a protected liberty interest during his administrative segregation hearing.  It is possible that 60 days in an unsanitary cell in SHU could (when compared with other cells and sentences) constitute an atypical and significant hardship in relation to the ordinary incidents of prison life sufficient to convey on a prisoner a protected liberty interest under the due process clause.  *See Scott v. Coughlin*,78 F. Supp.2d 299, 306-12 (S.D.N.Y. 2000).  Defendants' argument that the conditions of Plaintiff's cell are no longer an issue in the atypical-and-significant-hardship analysis because the magistrate judge found that those conditions did not justify a conditions-of-confinement claim is unpersuasive: while the two inquiries are somewhat factually analogous, they are legally independent.[11]

Turning to the issue of when Defendant Drown allegedly violated that protected liberty interest, Defendants are correct that "state action taken on the basis of both valid and invalid motivations is not constitutionally tainted by the invalid motive if the action would in any event have been taken on the constitutionally valid basis."  *Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir.

---

[11]    *See Proctor v. Kelly*, 05-CV-0692, 2008 WL 5243925, at *11, n.2 (N.D.N.Y. Dec. 16, 2008) (Report-Recommendation by DiBianco, M.J., adopted by Suddaby, J.) ("Plaintiff is confusing the 'atypical and significant hardship' used to determine whether a liberty interest exists for due process purposes, with cruel and unusual punishment for Eighth Amendment purposes."); *cf. Hamer v. Arnone*,11-CV-0279, 2011 WL 2680836, at *3, n.1 (D. Conn. July 7, 2011) ("Hamer includes the description of his conditions of confinement in administrative segregation in an apparent attempt to demonstrate an atypical and significant hardship to support his due process claim under *Sandin*. . . . The court does not consider the complaint to raise a separate Eighth Amendment challenge to the conditions of confinement.").

1984). However, "[n]ormally, determination of that issue of hypothetical causation requires fact-finding." *Sher*, 739 F.2d at 82. Summary judgment on the issue is appropriate only where "the undisputed facts may demonstrate that the challenged action *would* have been taken on the valid basis alone." *Id*. [emphasis added]. That is not the case here.

Granted, there appears to have been sufficient evidence to administratively segregate Plaintiff on January 22, 2008, even without receiving a "strict order" to do so (or relying on a *New York Daily News* article describing Plaintiff as a "violence-prone criminal[] who need[s] extra attention"). (*See, e.g.,* Dkt. No. 76, Attach. 5, at 10 [attaching Drown's written Hearing Determination]; Dkt. No. 76, Attach. 5, at 56 [attaching Duncan's Admin. Segregation Recommendation]; Dkt. No. 76, Attach. 5, at 61 [attaching record of disciplinary conviction for smuggling dated Jan. 17, 2008]; Dkt. No. 76, Attach. 7, at 1 [attaching Plaintiff's Disciplinary History].)[12] However, it is unclear whether in fact Defendant Drown *would* have administratively segregated Plaintiff based on that evidence, or whether Drown used that evidence merely as a pretext (or partial pretext) for that segregation, and was really acting pursuant to that "strict order."

For example, Plaintiff has adduced admissible record evidence that Defendant Drown stated that he was under a "strict order" to find Plaintiff guilty. (Dkt. No. 1, at ¶ 39.) The assertion that there had been an "order" was partially corroborated by evidence that the "Area Supervisor" and corrections officers stated to Plaintiff, upon his arrival at Clinton C.F., that they were under "orders" to place him to administrative segregation. (*Id*. at ¶ 30.) Moreover, the assertion that the order given to Defendant Drown supplanted the proper procedure was partially

---

[12]       The Court notes that it finds nothing inappropriate about considering the *New York Daily News* article about Plaintiff's crime–together with other evidence–in rendering a decision in the administrative segregation hearing.

corroborated by evidence that the "Area Supervisor" and officers stated to Plaintiff, upon his arrival at Clinton C.F., they did not know why his placement was occurring, and that they "haven't seen a case like this before." (*Id*. at ¶ 30.) A final reason that the current record is not sufficient for summary judgment is that it does not contain the transcript of the hearing on January 22, 2008, which Defendants have recently discovered and provided to Plaintiff. (Dkt. No. 90; Text Order filed Apr. 29, 2013.)

Moreover, setting aside the issue of *why* Defendant Drown found Plaintiff guilty, a genuine dispute of material fact exists regarding whether he wrongfully deprived Plaintiff of an opportunity to present his views at the hearing, by persuading Plaintiff "not to bother calling any witnesses or making too many objections, because it will just drag out the hearing . . . and it wouldn't matter anyway because he had a strict order to find Plaintiff guilty." (*Id*. at ¶¶ 39, 41.)

For these reasons, Plaintiff's procedural due process claim against Defendant Drown survives Defendants' motion for summary judgment.

### 2. Defendant Artus

After carefully considering the matter, the Court accepts in part, and rejects in part, the magistrate judge's recommendation regarding Defendant Artus.

Even if Defendant Artus directed corrections officers to place Plaintiff in a cell in SHU upon his arrival at Clinton C.F. on January 11, 2008 (and/or directed Defendant Duncan to recommend Plaintiff's administrative segregation on that date), such a directive does not give rise to a Fourteenth Amendment procedural due process claim. A prisoner enjoys no constitutional right to be free from being issued an administrative segregation recommendation that is unjustified (or placed in administrative segregation for 14 days pending a hearing on the

18

recommendation).[13]  Such a prisoner is afforded all the process that he is due through the fact

that the recommendation results in an administrative segregation hearing, at which the prisoner

has the opportunity to rebut the allegedly unjustified charges against him.[14]  This is so, regardless

of whether the administrative segregation hearing officer decides not to afford the prisoner that

due process (e.g., through prejudging the prisoner's case and persuading him not to call

witnesses and make objections).[15]

---

[13]      *See Cabassa v. Gummerson*, 01-CV-1039, 2008 WL 4416411, at *6 (N.D.N.Y. Sept. 24, 2008) (Report-Recommendation by Lowe, M.J., adopted by Hurd, J.) ("A prisoner enjoys no constitutional right against being issued an administrative segregation recommendation that turns out to be false.").

[14]      *See Phillips v. Roy*, 08-CV-0878, 2011 WL 3847265, at *3 (N.D.N.Y. Aug. 29, 2011) (Scullin, J.) ("Plaintiff merely alleged that Defendant Seyfert filed an administrative segregation recommendation based upon false and misleading statements. However, since the preparation of an administrative segregation recommendation cannot serve as the basis of a § 1983 claim, *and since Plaintiff had the opportunity to rebut these allegedly false charges at a hearing*, the Court adopts Magistrate Judge Peebles' Report and Recommendation, finds that Plaintiff has not stated a viable claim, and grants Defendants' motion to dismiss Plaintiff's fifth cause of action.") (emphasis added); *Abdur-Raheem v. Selsky*, 806 F. Supp.2d 628, 634 (W.D.N.Y. 2011) ("The first and second causes of action allege that the actions of Defendants Whitmore and Powers, in falsely preparing an Administrative Segregation Recommendation which resulted in Plaintiff's placement in SHU, denied Plaintiff due process of law . . . .  It is well settled that an inmate has no constitutionally protected right against being falsely accused of conduct which may result in the deprivation of a protected liberty interest, *as long as the prisoner is provided with procedural due process*. . . . [T]he only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as 'retaliation against the prisoner for exercising a constitutional right.'") (internal quotation marks omitted; emphasis added); *Edmonson v. Coughlin*, 21 F. Supp.2d 242, 254-55 (W.D.N.Y. 1998) ("James avers that his only involvement was preparation of the initial recommendation that Edmonson be placed in [Administrative Segregation]. . . .  Preparation of an [Administrative Segregation] recommendation is not a basis for a § 1983 claim. . . . [D]ue process is satisfied so long as an inmate is afforded an opportunity, at a hearing, to rebut false charges lodged against him. . . .  Edmonson had an opportunity, at his hearing, to contest the allegations in the recommendation.") (citations omitted).

[15]      *See Phillips v. Fischer*, 08-CV-0878, 2010 WL 7375637, at *6 (N.D.N.Y. Sept. 27, 2010) (Peebles, M.J.) ("Plaintiff's only allegations against Seyfert are that he filed the December 22, 2006 administrative segregation recommendation based upon hearsay and false and misleading statements.   Preparation of an administration segregation recommendation is not

Whether a warden has *caused* a hearing officer to deny the prisoner his due process at that administrative segregation hearing is another issue, giving rise to a separate claim against the warden, based on the denial of due process at the hearing. Here, based on the current record, a genuine dispute of material fact exists as to whether it was Defendant Artus (as opposed to some other superior of Defendant Drown) who (1) issued a "strict order" to Defendant Drown to predetermine a finding of guilt at Plaintiff's administrative segregation hearing, and/or (2) caused Drown to persuade Plaintiff to not call any witnesses or make too many objections, so as to deprive Plaintiff of an opportunity to present his views at the hearing. (Dkt. No. 1, at ¶¶ 30, 39 [Plf.'s Verified Compl.].)

For these reasons, Plaintiff's procedural due process claim against Defendant Artus survives Defendants' motion for summary judgment only in so far as it is based on the allegations contained in the preceding paragraph; otherwise that claim is dismissed.

### 3.    Defendant Duncan

After carefully considering the matter, the Court rejects the magistrate judge's recommendation regarding Defendant Duncan.

As explained above in Part III.B. of this Decision and Order, a prisoner enjoys no constitutional right to be free from being issued an administrative segregation recommendation that is unjustified (or placed in administrative segregation for 14 days pending a hearing on the recommendation); such a prisoner is afforded all the process that he is due through the fact that the recommendation results in an administrative segregation hearing, at which the prisoner has

---

a basis for § 1983 claim. . . . Due process is satisfied as long as the inmate is afforded a hearing to rebut the allegedly false charges [even if he his hearing officer decides not to afford him that due process, by prejudging the case]." ) (internal quotation marks and citations omitted), *adopted in pertinent part by Phiilips v. Roy*, 08-CV-0878, 2011 WL 3847265, at *3 (N.D.N.Y. Aug. 29, 2011) (Scullin, J.).

the opportunity to rebut the allegedly unjustified charges against him; this is so, regardless of whether the administrative segregation hearing officer decides not to afford the prisoner that due process.

In the alternative, the Court finds that Duncan is protected from liability as a matter of law by the doctrine of qualified immunity (with regard to Plaintiff's claim arising from the issuance of an administrative segregation recommendation), because officers of reasonable competence could disagree on the legality of recommending a prisoner for administrative segregation based on the nine grounds listed on page 4 of the magistrate judge's Report-Recommendation (summarizing the grounds of Defendant Duncan's administrative segregation recommendation).  (Dkt. No. 84, at 4.)

As for any reasonable possibility (based on the current record) that Defendant Duncan was the one who gave a "strict order" to Defendant Drown to find Plaintiff guilty at the administrative segregation hearing, the Court rejects that possibility: admissible record evidence on the subject clearly establishes that the "strict order" in question came from a superior, not Duncan, who was merely a "senior investigator" capable of issuing only "recommendation[s]," and whom Hearing Officer Drown referred to as his "colleague."  (Dkt. No. 1, Attach. 1, at 5 [attaching Administrative Segregation Recommendation signed by "Sr. Inv." Duncan]; Dkt. No. 76, Attach. 5, at 19 [attaching letter from Plf. to Fisher dated Dec. 1, 2008, stating, in pertinent part, that "[t]he reason [Drown] he stated he was [finding Plaintiff guilty] was because he didn't want to go against his own colleague (which is Mr. Duncan)"] [emphasis in original].)

Finally, as for any suggestion that Defendant Duncan received any written appeals or letters of complaint from Plaintiff or was even in a position to remedy any violations by Artus or Drown, the Court rejects that suggestion: out of special solicitude to Plaintiff, the Court has *sua*

*sponte* reviewed the record and can find no admissible evidence of that fact. (*See generally* Dkt. No. 1 [attaching Plf.'s Verified Compl.]; Dkt. No. 1, Attach. 1 & 2 [attaching exhibits to Plf.'s Verified Compl.]; Dkt. No. 76, Attach. 3-7 [attaching exhibits to Defs.' motion for summary judgment]; Dkt. No. 80 [attaching Plf.'s opposition to Defs.' motion].)

For all of these reasons, Plaintiff's procedural due process claim against Defendant Duncan is dismissed.

### 4. Defendant Racette

After carefully considering the matter, the Court rejects the magistrate judge's recommendation regarding Defendant Racette.

Based on the current record, the following facts are undisputed. Upon the recommendations of subordinates, Defendant Racette issued four weekly "shield orders" directing that, between January 11, 2008, and February 10, 2008, Plaintiff be placed in a special cell in the SHU, the front of which was covered by a "thick fiber glass shield." (Dkt. No. 1, at ¶¶ 31-32, 34 [Plf.'s Verified Compl.] Dkt. No. 1, Attach. 1, at 1-4 [attaching Exs. A1-A4 to Plf.'s Verified Compl.].) The orders stated that the reason for the orders was to conduct an "evaluation." (Dkt. No. 1, Attach. 1, at 1-4 [attaching Exs. A1-A4 to Plf.'s Verified Compl.].)

The governing regulations provide, in pertinent part, as follows:

> (b) Cell shields may be ordered for good cause, including but not limited to the reasons listed below:
> . . .
>> (2) The inmate . . . attempts to assault or harass staff [through the cell door].
>> (3) The inmate is so disruptive as to adversely affect the proper operation of the unit.
> (d) . . . The order and any renewal thereafter shall briefly state the reason for the order or renewal . . . .

7 N.Y.C.R.R. 305.6.

As an initial matter, Plaintiff's confinement in the shield-covered SHU cell in question for 30 days was not such an atypical and significant hardship in relation to the ordinary incidents of prison life to give rise to a protected liberty interest under the Fourteenth Amendment. *See DeMaio v. Mann*, 877 F. Supp. 89, 93 (N.D.N.Y.) (Kaplan, J.) ("Plaintiff . . . had no protected liberty interest in confinement in an unshielded cell."), *aff'd*, 122 F.3d 1055 (2d Cir. 1995).[16]

In any event, the fact that the shield order was reviewed on a weekly basis (and could have been grieved or appealed from) itself provided Plaintiff with sufficient due process. *See Dawes v. Coughlin*, 964 F. Supp. 652, 658 (N.D.N.Y.1997) (McAvoy, C.J.) ("[I]t has been held that the daily review of deprivation orders, the availability of the inmate grievance program, and the fact that the inmate has a judicial remedy to challenge deprivation orders, and restraining orders, under CPLR article 78 clearly provide due process of law."), *aff'd*, 159 F.3d 1346 (2d Cir. 1998). In this sense, the argument that Plaintiff possessed a due process rights against being issued unjustified shield orders is legally flawed for the same reason that Plaintiff possessed a due process right against being issued an unjustified segregation recommendation. *See, supra,* Parts III.B. and III.C. of this Decision and Order.

Indeed, the very notion that the shield orders were unjustified at all appears devoid of factual support in the current record, given Plaintiff's criminal and disciplinary history during time in question, which were filled with acts of violence. (Dkt. No. 76, Attach. 5, at 56

---

[16]     *See also Breazil v. Bartlett*, 998 F. Supp. 236, 243 (W.D.N.Y. 1997) ("[C]ourts in this Circuit have found that a prison inmate in New York has no protected liberty interest in confinement in an unshielded cell."), *accord, Figueroa v. Storm*, 07-CV-0018, 2011 WL 1598922, at *6 (W.D.N.Y. Apr. 28, 2011); *Kemp v. LeClaire*, 03-CV-0844, 2007 WL 776416, at *8 (W.D.N.Y. March 12, 2007); *cf. Young v. Scully*, 91-CV-4332, 1993 WL 88144, at *3 (S.D.N.Y. March 22, 1993) (finding that, even under prior legal standard set forth in *Hewitt v. Helms*, 459 U.S. 460 [1983], Section 305.6 did not contain the mandatory language necessary to create a protected liberty interest).

[attaching Duncan's Admin. Segregation Recommendation]; Dkt. No. 76, Attach. 5, at 61

[attaching record of disciplinary conviction for smuggling contraband dated Jan. 17, 2008]; Dkt.

No. 76, Attach. 7, at 1 [attaching Plaintiff's Disciplinary History].) An egregious disciplinary

history itself has been found to constitute sufficient ground for the issuance of a shield order.

*See Kemp v. LeClaire*, 03-CV-844, 2007 WL 776416, at *7-8 (W.D.N.Y. March 12, 2007)

(finding that corrections officer was authorized to issue shield order against prisoner based on "

his disciplinary history, including 44 previous Misbehavior Reports," despite the fact that the

prisoner believed that he was not a threat to security).

In the alternative, the Court finds that Defendant Racette is protected from liability as a

matter of law by the doctrine of qualified immunity (with regard to Plaintiff's claim arising from

Racette's issuance of the shield orders), because officers of reasonable competence could

disagree on the legality of Defendant Racette's issuance of shield orders under the

circumstances.

Finally, the Court can find, in the record, no admissible evidence from which a rational

fact-finder could conclude that (1) Defendant Racette was the one who gave a "strict order" to

Defendant Drown to find Plaintiff guilty at the administrative segregation hearing, (2) Defendant

Racette received from Plaintiff any written appeals or letters of complaint that specifically

informed Racette of the violation(s) allegedly committed by Defendants Artus or Drown,[17] or (3)

that Defendant Racette was even in a position to remedy any violation by Artus.[18]

---

[17]     (*See* Dkt. No. 1, Attach. 2, at 3-4 [attaching letter from Plaintiff to Racette dated Feb. 2, 2009, not mentioning above-described violations].)

[18]     (*See* Dkt. No. 1, Attach. 2, at 2 [attaching letter from T. LaValley, First Deputy Superintendent of Clinton C.F., to Plaintiff, dated Feb. 4, 2009, stating, in pertinent part, "I do not have the authority to release you from Administrative Segregation"].)

For all of these reasons, Plaintiff's procedural due process claim against Defendant Racette is dismissed.

### 5. Defendant Bezio

After carefully considering the matter, the Court rejects the magistrate judge's recommendation regarding Defendant Bezio.

Granted, a genuine dispute of fact appears to exist as to (1) the extent to which Defendant Bezio's reversal of Defendant Drown's decision would have changed the results of the 60-day reviews of the three-member committees (or the extent to which Bezio could have directly impacted those committees' decisions), and (2) the extent to which any failures by Bezio were cured by the results of the subsequent 60-day reviews of the three-member committees.

However, such disputes of fact are simply not material if no admissible record evidence exists that Defendant Bezio *knew* of the alleged violations. Here, no admissible record evidence exists that Plaintiff's appeals and complaints to Defendant Bezio (the sole avenue through which Bezio could have been personally involved in the violations alleged) mentioned (1) any allegation that Defendant Drown rendered his determination of guilt upon a "direct order" from a superior and after persuading Plaintiff not to call any witnesses or make too many objections, and (2) any allegation that Defendant Artus issued that "direct order."

For example, Plaintiff's sworn allegation that he appealed Defendant Drown's disposition to Defendant Bezio is silent of any allegation that he revealed Drown's above-described remarks in that appeal (which omission is conspicuous, given that the Complaint is otherwise detailed, consisting of more than 100 paragraphs of factual allegations, and more than 70 pages of attachments). (Dkt. No. 1, at ¶ 45.) Also devoid of such details is Plaintiff's sworn allegation regarding his March 23, 2008, request for reconsideration to Defendant Bezio. (Dkt. No. 1, at ¶ 47.)

Moreover, there is no mention of Defendant Drown's above-described remarks in either (1) the Prisoners' Legal Services of New York's letter (on Plaintiff's behalf) to Defendant Bezio dated April 18, 2008 (Dkt. No. 1, Attach. 1, at 11-12), or (2) the Legal Aid Society's letter (on Plaintiff's behalf) to Bezio dated January 13, 2009 (Dkt. No. 1, Attach. 1, at 34).

This is not surprising given that, with only a few exceptions, none of Plaintiff's many letters of complaints to other individuals mentioned either of the above-described remarks of Defendant Drown. (*See generally* Dkt. No. 1, Attach. 1 & 2 [attaching exhibits to Plf.'s Verified Compl.]; Dkt. No. 76, Attach. 3-7 [attaching exhibits to Defs.' motion for summary judgment]; Dkt. No. 80 [attaching Plf.'s opposition to Defs.' motion].)[19]

It is well established that, where a prisoner's letter to a prison supervisor does not mention an alleged constitutional violation, then the letter cannot fairly be said to have informed the supervisor of that alleged violation. *See, e.g., Reid v. Bezio*, 10-CV-0609, 2011 WL 1577761, at *7 (N.D.N.Y. March 30, 2011) (Homer, M.J.) ("Reid . . . relies on the second and fifth *Colon* categories. . . . [A] close review of Reid's complaint fails to reveal any allegation that his correspondence put Graham on notice of ongoing retaliation. Reid claims that his appeal raised four grounds on which to reverse the administrative determination related to the third disciplinary report. . . . However, he does not specify what these grounds actually were. Similarly, Reid does not describe of what he specifically complained in the grievance Graham denied . . . . Without further facts, it cannot simply be assumed that the appeal and grievance made Graham aware of ongoing constitutional violations."), *adopted by* 2011 WL 1585067

---

[19]     As for the possibility that the recently produced hearing transcript may reveal the above-described remarks, the Court concludes it will not. Even assuming for the sake of argument that Defendant Bezio reviewed either the transcript or audio recording when deciding Plaintiff's appeal in the spring of 2008, Plaintiff swears that Defendant Drown made his statements to Plaintiff "[b]efore starting the hearing." (Dkt. No. 1, at ¶ 39.)

(N.D.N.Y. Apr. 26, 2011) (Mordue, C.J.); *Cunningham v. Dep't of Corr. Servs.*, 04-CV-5566, 2009 WL 1404107, at *1 & n.2 (S.D.N.Y. May 20, 2009) ("[Plaintiff's] communications with Koenigsmann make no mention of the failure to provide the second and third Bicillin injections. Therefore, Koenigsmann was never put on actual or constructive notice of the violation. . . . Likewise, the communications with Phillips do not refer to the injections. . . . Even a letter to Phillips, dated March 25, 2004, from a lawyer acting on Plaintiff's behalf did not mention the Bicillin injections and instead referred only to laser surgery for cataracts and an MRI for back pain.") (internal quotation marks and citation omitted); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *14 (N.D.N.Y. Jan. 23, 2007) (Report-Recommendation of Lowe, M.J., adopted by Kahn, J.) ("Of course, the main problem with this letter as a form of notice to Defendant Goord is it did not mention or allude to a denial of medical care (or even that Plaintiff suffered from Hepatitis C).").

For all of these reasons, Plaintiff's procedural due process claim against Defendant Racette is dismissed.

### 6. Defendant LeClaire

After carefully considering the matter, the Court accepts the magistrate judge's recommendation regarding Defendant LeClaire.

Unlike the record with regard to Plaintiff's appeal and letters of complaint to Defendant Bezio, the record with regard to Plaintiff's letters of complaint read by Defendant LeClaire does contain admissible evidence from which a fact-finder could conclude that LeClaire was aware of at least one of the two above-described remarks of Defendant Drown, described above in Part III.E. of this Decision and Order. Specifically, in Plaintiff's letter to Defendant Fisher dated December 1, 2008–to which Defendant LeClaire responded–Plaintiff stated that Defendant

Down persuaded Plaintiff "not to call any witnesses or make any objections." (Dkt. No. 76,

Attach. 5, at 19.) This fact, when combined with the fact that the letter also stated that Drown

stated that he "didn't want to go against his own colleague," is sufficient to reach a jury. (*Id.*

[emphasis removed].)

For these reasons, Plaintiff's procedural due process claim against Defendant LeClaire

survives Defendants' motion for summary judgment.

**ACCORDINGLY**, it is

**ORDERED** that the magistrate judge's Report-Recommendation (Dkt. No. 84) is

**ACCEPTED in part** and **REJECTED in part**; and it is further

**ORDERED** that Defendants' motion for summary Judgment (Dkt. No. 76) is

**GRANTED** as to (a) Plaintiff's Eighth Amendment conditions-of-confinement claim against all

Defendants, (b) Plaintiff's procedural due process claim against Defendants Fischer, Duncan,

Racette and Bezio, and (c) Plaintiff's procedural due process claim against Defendant Artus to

the extent that the claim arises from a directive to corrections officers to place Plaintiff in a cell

in SHU upon his arrival at Clinton C.F. on January 11, 2008 (and/or a directive to Defendant

Duncan to recommend Plaintiff's administrative segregation on that date); and it is further

**ORDERED** that the Clerk of the Court shall terminate Defendants Fischer, Duncan,

Racette and Bezio from this action; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 76) is **DENIED**

as to (a) Plaintiff's procedural due process claim against Defendants LeClaire and the Estate of

Drown, and (b) Plaintiff's procedural due process claim against Defendant Artus to the extent

that the claim arises from a "strict order" to Defendant Drown to predetermine a finding of guilt

at Plaintiff's administrative segregation hearing, and/or actions causing Drown to persuade

Plaintiff to not call any witnesses or make too many objections, so as to deprive Plaintiff of an opportunity to present his views at the hearing, which claims shall proceed to trial; and it is further

**ORDERED** that the Clerk of the Court shall terminate the four Defendants listed in footnote 2 of the Report-Recommendation (i.e., Defendants Ferro, Reinhold, Hogan, and Porcelli); and it is further

**ORDERED** that Pro Bono Counsel be appointed for the Plaintiff for purposes of trial only; any appeal shall remain the responsibility of the plaintiff alone unless a motion for appointment of counsel for an appeal is granted; and it is further

**ORDERED** that upon assignment of Pro Bono Counsel, a final pretrial conference with counsel will be scheduled in this action with the undersigned, at which time the Court will schedule a jury trial for Plaintiff's procedural due process claims as described above against Defendants LeClaire, Estate of Drown and Artus. Counsel are directed to appear at the final pretrial conference with settlement authority from the parties.

Dated: September 20, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge